[Civ. No. 4248. Fifth Dist. July 17, 1979.]

In re CHARLES G., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
CHARLES G., Defendant and Appellant.

COUNSEL

Barry F. Nix, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger and George Deukmejian, Attorneys General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Eddie T. Keller, Karen S. Russo and Thomas D. McCrackin, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**HOPPER, J.**—The juvenile court found true a supplemental petition that alleged appellant (hereinafter Charles) came within Welfare and Institutions Code section 602 in that he had committed burglary of an automobile.

A summary of the facts discloses: On the morning of March 31, 1978, campus supervisor Pat Hopkins and school security agent William Patterson were patrolling the South High School campus for students who were not in class. Approaching a parking area, the men happened upon two students, Charles and one Elroy Miller. Miller was standing two to three feet from the passenger door of a pickup truck which belonged to Robert Lathrop. When Patterson asked Miller to explain his presence, Charles' head raised up, and he was observed on the front seat inside of the truck. When Patterson asked Charles what he was doing inside the truck, Charles exited and ran a short distance before complying with Patterson's order to halt. After Charles was advised of his *Miranda* rights, he steadfastly denied that he had been inside the truck and explained that he had run because he had known that Patterson was after him.

Later, after Miller and Charles had been sent to the office, Patterson contacted the truck's owner, Lathrop. When they examined the pickup, they found no signs of forced entry. On the ground nearby they did find three tools which had previously been inside the glove compartment. Lathrop testified that he had driven the pickup to school that morning and parked it in the parking lot. He added that to the best of his knowledge the vehicle was then locked, in accordance with his normal practice.

Charles appeals contending (1) that the substantial evidence rule violates federal due process and (2) that there was no substantial evidence to sustain a finding that the vehicle allegedly burglarized was locked. We consider each of those contentions in order.

■ In *People* v. *Redmond* (1969) 71 Cal.2d 745, 755 [79 Cal.Rptr. 529, 457 P.2d 321] (applied to juvenile cases in *In re Roderick P.* (1972) 7 Cal.3d 801, 809-810 [103 Cal.Rptr. 425, 500 P.2d 1]) our Supreme Court established the substantial evidence rule as the test on appeal. As an intermediate appellate court, we are bound by the decisions of our Supreme Court (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937]). Consequently, we reject the contention that the substantial evidence rule violates federal due process (cf. conc. opn. of Elkington, J. in *People* v. *Blum* (1973) 35 Cal.App.3d 515 [110 Cal.Rptr. 833]).

An essential element of burglary of an automobile set forth in Penal Code section 459 is that the vehicle must be locked. In the instant case the victim testified on direct examination as follows:

"Q. When you left the truck, was it locked?

"A. To the best of my knowledge, yes.

"Q. Is it a normal practice for you to lock your vehicle?

"A. Yes, it is." Cross-examination of the victim elicited the following:

"Q. Mr. Lathrop, you don't remember exactly locking the door on that particular day, do you?

"A. Well, let me put it this way. I lock it every day. *To the best of my knowledge, it was locked.* Now, did I personally, you know—

"Q. You don't remember? Did you talk to Mr. Patterson about this after he came and told you your car had been broken into?

"A. I walked up between classes, yes.

"Q. Isn't it true that you told him that you were not sure whether or not your car was locked?

"A. I might have told him that, yes; at the time I might have, yes.

"Q. Why would you have told him that at that time? Don't you lock it?

"A. Well, because he probably asked me like you, 'Did you lock it?' [¶] Well, *to the best of my knowledge, yes,* but, you know, maybe I didn't, but I make it a habit of locking my car because I realize that there are a lot of thefts, and I don't leave anything open." (Italics added.) Subsequently Patterson testified that on the date of the offense the victim told him that he (the victim) was not sure whether or not he had locked the vehicle.

■ Essentially, Charles asserts that testimony that one normally locks his doors is insufficient to support a finding that the doors were in fact locked, particularly in light of the absence of signs of forced entry and because no burglar tools were found in the possession of Charles. We disagree.

Evidence Code section 1105 provides: "Any otherwise admissible evidence of habit or custom is admissible to prove conduct on a specified occasion in conformity with the habit or custom." ■ The victim's testimony as to habit was clearly admissible under Evidence Code section 1105.[1]

From that circumstantial evidence of habit, and reasonable inferences therefrom, the judge could have properly concluded beyond a reasonable doubt that the truck was locked and remained locked until Charles entered. There was substantial evidence to establish this necessary element of the corpus. We are unaware of any statutory or judicial requirement of corroboration of habit testimony. There is no evidence in the record, one way or the other, as to either (1) the extent of examination of the vehicle and by whom for signs of forced entry or (2) the extent of a search, if any, of Charles and, if there be one, by whom and whether or not burglar tools were on or in his possession.[2] ■ In reviewing the

---

[1]In *People* v. *Wein* (1977) 69 Cal.App.3d 79, 91 [137 Cal.Rptr. 814] (criticized in Jefferson, Cal. Evidence Benchbook (1978 supp.) Evidence of a Person's Character, Habit, or Custom To Prove His Conduct, § 33.6, pp. 406-408, as improper in that inadmissible hearsay was produced—a criticism which is factually inapplicable in the ' instant case) a defendant's conviction of a felony murder (robbery as the underlying felony) was upheld where basically the only evidence of robbery was that an elderly lady was assaulted and killed and cash was not in her bedroom although testimony showed that she customarily left cash there and she had stated that she intended to save her money to make certain purchases.

[2]Patterson stated in response to questioning that *he* did not find any tools, but no questions were asked about whether he conducted any search as such.

conclusions of the trier of fact, we must view the evidence in the light most favorable to respondent and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. (*People* v. *Vann* (1974) 12 Cal.3d 220, 225 [115 Cal.Rptr. 352, 524 P.2d 824]; *People* v. *Redmond, supra,* 71 Cal.2d 745, 756.) If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also be reasonably reconciled with a contrary finding does not warrant a reversal of the judgment. (*People* v. *Bynum* (1971) 4 Cal.3d 589, 599 [94 Cal.Rptr. 241, 483 P.2d 1193], overruled on different grounds in *People* v. *Williams* (1976) 16 Cal.3d 663, 669 [128 Cal.Rptr. 888, 547 P.2d 1000].) We must make all reasonable inferences to support the findings of the juvenile court and we must review the record in the light most favorable to the juvenile court order. (*In re Robert P.* (1976) 61 Cal.App.3d 310, 315 [132 Cal.Rptr. 5].) Viewing the evidence in accordance with the rules governing us, we conclude that there was substantial evidence.[3] We make no inferences whatsoever from the lack of evidence of forced entry or lack of burglar tools. Nor do we engage in a weighing process in the manner of a trial court. Additionally, we note that neither forced entry in the usual sense of the word nor use of burglar tools are elements of automobile burglary. The manner in which Lathrop testified was indicative of someone who was trying to be truthful. The strength or weakness of a witness often depends on that witness' tone of voice and demeanor. We cannot say that Lathrop did not inspire confidence in the trial court and convince that trial court. The use of language such as "to the best of [his] knowledge" is far from being conjectural. Lathrop's statement is an honest answer by a conscientious witness. In fact, a more positive answer might in many situations be suspect. There was such evidence as reasonably inspires confidence and is of solid value, i.e., substantial evidence, if believed, to establish the locked condition of the vehicle. The trial judge was at liberty to believe or disbelieve the circumstantial evidence and to weigh the habit evidence along with all other evidence, if any, in the case. In California the corpus delicti may be established entirely by circumstantial evidence. (1 Witkin, Cal. Crimes (1963) Elements of Crime, § 91, pp. 87-88; 21 Cal.Jur.3d, Criminal Law, § 2529, p. 304.) Resolution of credibility and of any inconsistencies was

---

[3] We would reach the same conclusion following the standard set out in *Jackson* v. *Virginia* (1979) 443 U.S. 307 [61 L.Ed.2d 560, 99 S.Ct. 2781]. We would not conclude in the instant case that no rational trier of fact could have found true the allegations of the supplemental petition beyond a reasonable doubt. (See *Jackson* at p. 324 [61 L.Ed.2d at p. 576].)

for the trial judge. We are not a reseeing court. A reasonable trier of fact could have found that the prosecution sustained its burden of proving the allegations of the petition true beyond a reasonable doubt. (*People* v. *Bassett* (1968) 69 Cal.2d 122, 138-139 [70 Cal.Rptr. 193, 443 P.2d 777].)

The judgment is affirmed.

Brown (G. A.), P. J., concurred.

**FRANSON, J.**—I respectfully dissent. In my view, habit evidence *standing alone* does not constitute substantial evidence to support a criminal conviction. It is too tenuous; no reasonable trier of fact would find a defendant guilty beyond all reasonable doubt solely on the basis of such evidence.

The key element of the crime of auto burglary is that the doors of the vehicle be locked at the time of the entry. (Pen. Code, § 459.) This means that absent direct evidence that the doors were locked there must be some evidence of a forced entry into the vehicle to satisfy the prosecution's burden of proof. (*People* v. *Toomes* (1957) 148 Cal.App.2d 465 [306 P.2d 953]; *People* v. *Massie* (1966) 241 Cal.App.2d 812 [51 Cal.Rptr. 18]; cf. *People* v. *Malcolm* (1975) 47 Cal.App.3d 217 [120 Cal.Rptr. 667].) In the present case, the only evidence that the vehicle's doors were locked is the owner's testimony that, although he could not recall whether he had locked the doors on this particular occasion, he made "a habit of locking [his] car" and that it was his "normal practice" to lock his car. This evidence is insufficient to fill the hiatus caused by the absence of direct evidence that the doors were in fact locked. On the other hand, if there were evidence of a broken window or forced entry into the car, the void would be filled because of the reasonable certainty that a person would break into a vehicle only upon finding the doors locked. In short, although habit evidence may be considered *relevant* to prove conduct on a particular occasion, it is not sufficiently persuasive to satisfy the *certainty* required in criminal cases.[1]

To support a criminal conviction on appeal, the evidence tending to show guilt must be "substantial" as to each essential element of the

[1]*In re Winship* (1970) 397 U.S. 358 [25 L.Ed.2d 368, 90 S.Ct. 1068] explains that the reasonable doubt standard is the prime instrument for reducing the risk of convictions resting on factual error. It " 'impresses on the trier of fact the necessity of reaching a subjective state of *certitude* of the facts in issue.' " (*Id.*, at p. 364 [25 L.Ed.2d at p. 375]; italics added.)

crime. To be substantial, the ·evidence must be credible and of "solid value." It must inspire confidence. (*People* v. *Bassett* (1968) 69 Cal.2d 122, 139 [70 Cal.Rptr. 193, 443 P.2d 777].) Evidence which merely raises a strong suspicion of guilt is not sufficient to support a conviction. "Suspicion is not evidence; it merely raises a possibility, and this is not a sufficient basis for an inference of fact." (*People* v. *Redmond* (1969) 71 Cal.2d 745, 755 [79 Cal.Rptr. 529, 457 P.2d 321].)

Wigmore explains the problem of accepting habit or custom to prove an act: "There is, however, much room for difference of opinion in concrete cases, owing chiefly to the indefiniteness of the notion of habit or custom. If we conceive it as involving an *invariable regularity* of action, there can be no doubt that this fixed sequence of acts tends strongly to show the occurrence of a given instance. *But in the ordinary affairs of life a habit or custom seldom has such an invariable regularity.* Hence, it is easy to see why in a given instance something that may be loosely called habit or custom should be rejected, because it may not in fact have sufficient regularity to make it probable that it would be carried out in every instance or in most instances. Whether or not such sufficient regularity exists must depend largely on the circumstances of each case." (1 Wigmore on Evidence (3d ed. 1940) § 92, p. 520; italics added.)

Although people commonly believe that they make a habit of locking their car doors, the vagaries of human behavior often cause them to forget to lock their doors—as is evidenced by the number of thefts from unlocked cars on the public streets. Thus, an owner's testimony that he routinely locks his car doors does not constitute evidence of such invariable regularity within the Wigmore standard as to constitute substantial proof that the doors in fact were locked on a particular occasion.

I find no California case holding that habit evidence alone is sufficient to support a criminal conviction. *People* v. *Wein* (1977) 69 Cal.App.3d 79 [137 Cal.Rptr. 814], relied on by the majority, is clearly distinguishable. In that case, in addition to testimony by members of the family of the deceased that she habitually kept money hidden in her bedroom, the family members testified that the decedent had *stated* that she intended to save her money to make certain purchases. The court there said, "Here evidence that Mrs. George had a habit of saving money and hiding it in the bedroom *coupled with her various declarations that she intended to do so* . . . constituted substantial evidence that she did in fact have money concealed in the bedroom." (69 Cal.App.3d at p. 91.) Thus, *Wein* does

not stand for the proposition that habit evidence alone will support a criminal conviction.

Turning now to appellant's due process challenge to the "*any* substantial evidence" rule in California as it applies to appellate review of criminal convictions, I would emphasize Justice Elkington's prophetic assertion in his concurring opinion in *People* v. *Blum* (1973) 35 Cal.App.3d 515, 521 [110 Cal.Rptr. 833], that the constitutional requirement that no person shall be convicted except upon proof beyond a reasonable doubt (*In re Winship, supra,* 397 U.S. 358, 364 [25 L.Ed.2d 368, 375]) requires a consideration of the *whole record* in determining whether there is substantial evidence to support the conviction. The due process clause of the Fourteenth Amendment requires a view of the supporting evidence in context with the other evidence. (*People* v. *Blum, supra,* 35 Cal.App.3d 515 at p. 525; see also Witkin, Cal. Criminal Procedure (1978 supp.) Appeal, § 683, p. 999.) Justice Elkington also stated in *Blum*: "It is abhorrent to any sense of justice that persons be convicted of crimes they did not commit. Perfection of course is not obtainable in this world, but that furnishes no reason why the law should not, within reason, continually strive to prevent such miscarriages of justice. Yet nothing would seem better calculated to perpetuate such injustice, than an '*any* substantial evidence' rule which limits the evidence which may be considered in determining whether, as a matter of law, there is sufficient evidence to convict." (*People* v. *Blum, supra,* 35 Cal.App.3d 515 at p. 529.)

In *Jackson* v. *Virginia* (1979) 443 U.S. 307 [61 L.Ed.2d 560, 99 S.Ct. 2781], the United States Supreme Court recently held in a juvenile proceeding that a federal habeas corpus court must consider not whether there was *any* evidence to support a state court conviction, but whether there was sufficient evidence to justify a rational trier of fact to find guilt beyond a reasonable doubt, citing *In re Winship, supra.* The high court held that *In re Winship* presupposes as an essential of the due process guaranteed by the Fourteenth Amendment that no person shall be made to suffer a criminal conviction except upon sufficient proof—defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of *every element* of the offense. This "subjective state of near certitude of the guilt of the accused . . . symbolizes the significance that our society attaches to the criminal sanction and thus to liberty itself." (*Jackson* v. *Virginia, supra,* at p. 315 [61 L.Ed.2d at p. 571].) The critical inquiry on review of the sufficiency of the evidence to support a

criminal conviction must be not simply to determine whether the jury was properly instructed on reasonable doubt (or that a trial or juvenile judge understood the heavy burden of proof) but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. The relevant question thus is whether, after viewing the evidence in the light most favorable to the prosecution, any *rational trier of fact* could have found the essential elements of the crime beyond a reasonable doubt.

The conclusion is inescapable: under the authority of *Jackson* v. *Virginia, supra,* the *any* substantial evidence rule is no longer the law in California in the review of criminal convictions since it does not comport with due process. The appellate court must examine the entire record in deciding whether there is substantial evidence to support the conviction. This being so, the habit evidence in the present case must be viewed in light of the victim's inability to recall shortly after leaving the vehicle whether he had locked the doors, the absence of signs of forced entry into the vehicle, and the absence of any burglary tools such as a wire clothes hanger in appellant's possession. When all of these facts are considered, it is readily apparent that no reasonable trier of fact could have found beyond "all reasonable doubt" that the doors were locked when appellant entered the vehicle.

The affirmance of the juvenile court's finding that appellant committed an auto burglary deprives him of his constitutional right to the presumption of innocence.

I would reverse the judgment.

Appellant's petition for a hearing by the Supreme Court was denied September 12, 1979.